Good morning, Ms. Monroe. I see you deserve two minutes for rebuttal, and you can begin whenever you're ready. Good morning, Your Honors. May it please the Court, Melanie Monroe on behalf of Plaintiff Larissa Bates. Abbott's only argument against the plausibility of plaintiff's claims is that she supposedly does not allege the challenge claims are materially misleading. But seven other cases, including one considering the exact products and claims at issue here, have found that health and wellness claims are plausibly misleading based on the same theory advanced in this case. Additionally, as alleged in paragraphs 97 through 101 of the complaint, the FTC, the Center for Science in the Public Interest, Harvard Health Watch, and various health professionals have all taken note of the misleading nature of Abbott's advertising of Ensure as healthy when it is, in fact, not. Similar to allegations concerning the NAD... Ms. Monroe, would you agree that in this case there's no affirmative misrepresentation with respect to the sugar content as relates to the statements you're challenging, healthy, nutritious? That's not an affirmative statement about an amount of sugar in the product, right? That's correct, Your Honor. Our theory is that the claims convey that the product is healthy, beneficial to health overall, and beneficial to heart, immune, and digestive health. We have case law, and I can go through the cases with you, both published opinions and three summary orders in the past year. It's all different types of products, obviously, but we have said that if the statement, it would be ambiguous as to the content of a particular ingredient or the process. One case involving smokehouse almonds, that as long as the back label fully discloses the content and ingredients, that there's not a plausible claim. So why isn't that the situation here, that when something says it's healthy or nutritious, it's ambiguous as to the sugar content, and consumers just turn it over and they look at the label, if they're interested in sugar, and see how many grams it has? Well, there's several responses to that, Your Honor. The first is that because the claims are not making any representations as to sugar, there's nothing for the consumers to check on the nutrition facts to correct. The claims are conveying that the products are healthy overall, and there's no reason for them to question that with regards to the sugar content. Second... So, hang on. Just so I understand what you're saying. Are you saying that even if they looked at the back and they saw, say, 20 grams of added sugar, they wouldn't know that that is an unhealthy level, or that they still wouldn't, or that they have no reason to look at that number at all? I think it's both. They have no reason to check. The representations lead them to believe that the products are healthy overall. So there's nothing ambiguous about that. We plausibly allege that they convey unambiguously that the products are healthy, and you only check the back when the products, when the claims are ambiguous. And also, even if... Please finish your answer. Even if they do turn it over and check, we have allegations at paragraphs 83 through 96 of the complaint that consumers' health literacy is just not sufficient for them to understand that the numerical grams of sugar renders the product unhealthy. The actual... So let me ask. You focus on the word healthy, but I understood your attack to be largely more encompassing. You have the number one doctor recommended, the complete nutrition, all the kind of marketing campaign, as well as the seals of approval that suggest that you don't need to eat anything more in order to sustain your dietary needs. But it sounds to me from your arguments and your responses to my colleagues that you really focused on healthy as being inconsistent with the amount of sugar in this product. Is that where we should focus our attention? Yes, and I believe that the claims, complete, balanced nutrition, do convey that the products are healthy, but it also literally falls because it's not balanced. It just focuses on healthy. Yes. And do you agree that there are different views about the appropriate amount of sugar to have in one's diet, and they change over time? While nutrition science, like any science, has developed over time, the consensus now is that even the highest level is saying that 10% or less is what's healthy in the diet. So while the World Health Organization says that it's 5%, the highest level that's recommended is by the FDA, and that's 10%. And all of the products have 16% to 40%. If we adopted your view, companies would never be able to put terms like healthy or nutritious on their products. If there was some ingredient in there that could be viewed by science as an unhealthy ingredient, you would say that it's misleading because there's something in the product that is potentially unhealthy. Is that your position? Yes. So, for example, I like lentil soup. If it says healthy lentil soup and it has 1200 milligrams of salt, that would be, there would be a claim under New York law, you can't put healthy lentil soup or nutritious lentil soup. Yes, I believe so. And also under regulations, that would be unlawful. With whole bars, yogurt, yogurt has sugar in it, you know, potentially a lot of sugar. Never use the word healthy. I agree with that, Your Honor. The FDA and... What case, I know there's California cases, but we're in the Second Circuit, and we're in a case under New York law, or in this circuit, has a court ever said what you're suggesting here, that general terms like healthy, nutritious, complete, if there's full disclosure of all the ingredients on the back label, create a claim under 349? I believe Akron versus Coca-Cola held that. That was health and wellness claims on vitamin water. And the allegations were that representations such as vitamin water and focusing on the health benefits of the products, such as we'll give you focus and clarity, were misleading, notwithstanding the nutrition facts disclosure of added sugar, because the health claims were bombarding the consumer into believing that the product was healthy, and that the disclosure was not sufficient to ameliorate that misleading message. That's the only case? Akron? I believe that's the only one that deals with sugar expressly. There are other cases that deal with affirmative misrepresentations that the product is healthy due to ingredients, but that the disclosure on the back... So the result of this holding would be every company would have to strip those terms from its products to avoid potential lawsuits, like you're suggesting here? I'm sorry, I didn't catch that. Would every company have to strip these terms off of their products because of fear that there's some ingredient in there that could be harmful, especially if you use the product multiple times per day? I think it is manufacturers' responsibility to understand the product that they're manufacturing and the food science. Especially nobody could use these terms then. Nobody could use these terms. Not anyone that's putting too much sugar or nutrients that have shown to cause deleterious health effects, such as diabetes. If a fish has mercury in it, so you couldn't say healthy or nutritious fish, any fish could potentially be harmful because of mercury in it, right? If it was at a level that science showed was unhealthy, I think that's accurate. So what level of sugar does a product have to... You can't use the word healthy, and what's the amount? The FDA has proposed rulemaking that if a product has more than 5% of your daily sugar, it shouldn't be called healthy. That's 2.5 grams per product. That rule has not yet come into force, though, right? No, it's been proposed and it was currently set to actually become final in April of this year, but it was being held up by... They gave extensions on allowing additional comments. And that could be changed over time. It has not been enforced until now. Correct, but the FDA has said that a balanced diet has less than 10% sugar, so they've already The USDA has already set that level as far as what the science shows. It's just that the very specific regulation on healthy nutrient content claims has not incorporated a sugar limit yet, but that's only to deal with very specific claims that qualify as healthy nutrient content claims. And would you agree that if that regulation comes, then at that point, any claims about nutrient claims that relate to sugar would then be preempted? Yes, if they qualify under 10165D2 as a healthy nutrient content claim. Right, no, I understand that, but if they do, that's the number. Then we get into federal preemption and then the GBL goes out the window completely, right? Correct. Yeah. All right, thank you. We have two minutes for your rebuttal and we'll hear from Mr. Gleick. Thank you, Your Honors. For the record, Michael Gleick from Kirkland & Ellis on behalf of Abbott Laboratories. May it please the Court. I want to focus this morning on two things that were touched upon in part in Appellant's presentation. The first is the question of when it's appropriate to consult the back or side panel of a label, and the second is this notion of health literacy and whether the fact that Abbott indisputably disclosed the amount of sugar on every bottle of Ensure is somehow insufficient because consumers can't understand it. I actually want to start with the second point and I'll circle back to the first. So with respect to the argument that the sugar disclosure on every bottle isn't enough, a few responses. First, at the outset, the Appellant is really trying to have it both ways. The challenges in this case are two statements, some of which are one or two words, nutrition, shake, digestion, immune, that by their own terms don't use the word health, don't use the word healthy, are references to the nutrient content, and make no reference whatsoever to sugar. And that was So, you know, your opponent seems to have narrowed her claims at oral argument right now. I have been looking at the packaging as a whole, which suggested to me that it was a healthy alternative to eat nothing but Ensure twice a day. That would be a complete nutrition package. The doctors recommended it. I thought to myself, well, maybe there's a health condition that you can't chew and that this would be an alternative that would be appropriate. But that isn't what she's saying right now. But could you address my concern that someone could be misled, a reasonable consumer could be misled, not knowing what sugar content is recommended by the American Heart Association, and this is above that, as well as the proposed rule in the FDA, that they could, like, give up getting the vegetables and getting the protein and the meat elsewhere and just drink Ensure for their meals because it's more convenient. Is there any, do you have any concern about that? So, I would say a few things. The first is that the complaint is unmistakably focused on sugar and sugar alone. I think there are more than 50 paragraphs in the complaint that reference sugar, including an entire section about sugar, sweetened beverages. Yes, but the advertising campaign had many different components to it, including number one, doctor recommended, complete nutrient shake, and depending upon the particular product, different claims that it was complete nutrition, which seems to be undercut by the sugar content. So, the references that you're speaking to, complete balanced nutrition, are, in fact, references to the nutrition in the product, which nobody disputes are there. There are six products, I believe, that are alleged in the complaint, and all but one of them, which is a specialty product, has more than two dozen vitamins and minerals in it. And, again, that's not disputed. The plaintiff here wants to read something, frankly, into these statements that just isn't there, that the statements imply some broader message about the products being low in sugar or being healthy because they lack sugar. And I think that's where she runs headfirst into this Court's precedents, which were addressed earlier. You know, the appellant wants to focus on Mantecas, but this Court's precedents, frankly, dating back to the Fink case, that says that the context of the label is crucial. You need to look at the label as a whole. Even in Mantecas, this Court held that you need to look at the advertisement of the label as a whole, including any disclaimers in qualifying language. And when you do that, every single bottle of Ensure discloses the amount of sugar. And I understand appellant has argued today that, well, consumers don't necessarily understand what that sugar content means. I guess a few responses to that. The first is, it's not just the amount of sugar. Right there on this very same label, it has a percent daily value. So if you wanted to even grant that perhaps, we disagree with this, that the grams themselves were not enough, it also has, right in that column, on this familiar Nutrition Facts panel that has been on packages for 30 years at the direction of Congress and the FDA, people are familiar with, it has both the amount and the percent daily value. But I think that what she would say is that people don't know typically that 50 grams maximum is recommended for a 2,000 calorie diet. People are not really aware of the significance of the sugar content. So again, that's why I think that the percent daily value is a distinguishing factor here as well. It's not just grams. It also says, you know, for instance, at A85, we have the Inturo original package. That product has nine grams of added sugar. And it says 18 percent of the daily value for that day. And respectfully, we're talking about sugar here. This may be a different case if we were trying to smuggle some ingredient into an ingredient list of 50 items. It's right there on every package in the top portion of the Nutrition Facts panel. And consumers are readily familiar with sugar and the potential harms of overconsumption of sugar. I think any parent who has gone through the recent Halloween season knows that. But the court is not … So is there a position then, Mr. Glick, that a company could use the term healthy, nutritious for any product as long as they properly disclose the amount of sugar, salt, and other things that might be bad for you? As long as that's properly disclosed, you could put healthy or nutritious on any product. Is that true or not true? Well, so I want to say at the outset that the words nutritious are not included in any of the statements at issue here. There are references to nutrition, which are references to the nutrients. And any of the terms where the word healthy or health is used are on the side or back of the label, directly adjacent to this Nutrition Facts panel. So it's a much different case. I think … So what's the answer to my question? The answer to your question, Your Honor, is I think this would go to the … What about a chocolate bar? You know, some people think chocolate has some good health effects. Could you say healthy chocolate bar, even though it has a lot of sugar? I think this would go back to the example of Mantecas and the three cases that you referenced, Baines, Foster, and Hardy from last year, where there is a … There would in that instance be a clearly inaccurate statement or an affirmative representation in the front of the label as to the healthiness or the nutritious value of the product. Here we have nothing of the sort. You have statements that imply, I think if I were to sort of draw an analogy to the Hardy case, the tortilla case that this Court decided last year, it provides an association perhaps with healthiness. And as this Court directed … What does complete balanced nutrition mean? Each serving of number one doctor-recommended ensures a source of complete balanced nutrition, including 26 essential vitamins and minerals. Recommend two bottles per day as part of a healthy diet. I mean, I think an uninformed consumer could reasonably read these representations and decide, you know, this is really all I need, complete balanced nutrition. The reference to complete balanced nutrition is, again, a reference to the nutrients, which are identified directly below, at least with the package I'm looking at here. It says 25 vitamins and minerals. And to the extent that that same consumer has … You're interpreting that for me. But, you know, I'm talking about the reasonable consumer who doesn't know and doesn't really know how to read the label. You know, unlike in the Taste of Mexico case, you know, there was manufactured in the United States. You don't need anything other than the knowledge of English language to understand that the thing was made in the United States. This is a little more complicated, isn't it? Understood, Your Honor. I think that the problem here for this appellant is that she is focused wholly, entirely on sugar. And her sole theory is that these statements imply something about the health value of the product as it relates specifically to sugar. I sort of like Judge Carney's question because there are some statements like number one, Dr. Recommended Brand doesn't have anything to do particularly with sugar. Couldn't that be actionable if that was incorrect? Also, recommending a certain number of bottles per day, that's a very specific claim. So don't we have to analyze those separately than the other claims that will relate to, I think, the amount of sugar? So I think with specific regard to the number one pediatrician recommended brand claim, I think that claim that the court held below was not only not materially misleading from a health perspective, but also there was no allegation that that was untrue. And it is. Abbott runs surveys and these insured products, when it comes to this particular category of products, is the number one recommended brand. I think if I could go back to you... What about recommending a number of bottles per day? Could they put on there, we recommend five bottles a day, even though it would be an unbelievable amount of sugar? All that would be inactionable? So there is, just for the record, there is one product where there is a reference, again, directly adjacent in small print, an instructional claim directly adjacent to the Nutrition Facts Panel that does recommend two bottles per day. That statement does not appear on any of the other five products that are at issue. And I think... Can I just ask on that? You've said a number of times that some of these claims are adjacent to the Nutrition Facts. And I guess I understand what you're saying is they have to be understood as a reference or a cross-reference or a gloss on the Nutrition Facts that are listed by milligrams and percentages. But my understanding is that you have not raised a preemption claim as to all of the statements that are contested in the complaint, right? That's correct. So I guess I don't really understand where you're going with this. I would understand if you were saying, look, these are small bottles. A lot of the contested statements are so close to the Nutrition Panel that they must be read as implicitly a rephrasing or a reconceptualization of the list of nutrients that are right there. And then I would understand you have a preemption claim. Well, tell me, first of all, why did you not make that claim? And how is that different from what you're saying here? You're saying read it in conjunction with the nutrition claim. So I have two separate questions. We raised the preemption argument as it relates to certain implied nutrient content claims. Because certain statements are made in direct reference to nutrient references on the product. And we're not claiming that the Nutrition Facts Panel is a nutrient content claim in and of itself. I think the point about these statements being directly adjacent to the Nutrition Facts Panel is going back again to this Court's precedence, the label has to be read as a whole. And if people are turning over the bottle and seeing and claiming to rely upon these statements that are directly adjacent to the Nutrition Facts, we think they clearly have to see both of them at the same time. But if you're saying you have to look at the packaging as a whole and the bottle as a whole, that's when you get into the things that look like doctor's seals and number one doctor recommended and complete nutrition shake and all of the various statements that imply this is almost a therapeutic medical kind of product, which seem quite contrary to the current recommendations and the proposed regulation by the FDA about recommended sugar intake. Isn't that worse for you? I don't think so. Again, just because this is a complaint that's wholly focused on sugar. And if I could go back to what Judge Bianco raised earlier is there's really no limiting principle to what the plaintiff is putting before you here. I think if this complaint were allowed to proceed past the pleading stage, it would really amount to open season on product labels. And let me explain why. I mean, if the statements at issue here were enough to state a plausible theory, notwithstanding the clear sugar disclosure, it really is hard to envision any statement on a product label, even tangentially related to nutrition or health, that could not survive a pleading stage challenge. And that's because no matter what the label said, a consumer plaintiff would always be able to say, oh, I understood that statement to be about health and I'm not in position to evaluate what that means. And this time it's sugar, but the next time it could be sodium or fiber or iron or any nutrient whatsoever on a product. They would have to have a litany of scientific studies that suggest that in fact it's an unhealthy thing. I mean, they wouldn't be able to say, I assume I'll make this up, let's say you've got your, whatever it is, 4.5 milligrams of iron and that's what makes this unhealthy, unless they've got studies that say, oh yeah, the iron is bad for you. Which I'm assuming are not out there. So I don't see how you're saying that anybody could sue about anything with the word healthy. Because I thought they're only going to be able to make it there if they have scientific studies that allow for a plausible inference that it's not in fact healthy, right? Isn't that a built-in limitation? They need facts? Well, I think there are any number of nutrients that a putative plaintiff could identify that, if consumed in excess, could be deemed at an unhealthy level. Well, sure. If there were, I don't know, like 100 pounds of iron in something, like rusty nails, then at a certain point they could have a study that says, well, you can't eat rusty nails. But they would be backed up by a study that says you can't eat 16 pounds of rusty nails, right? I mean, they wouldn't, I assume, given these facts, be able to complain that Ensure is unhealthy because it contains some iron. I assume that's because there are no studies that suggest that this level of iron is unsafe. Because that's my point is, isn't that a self-imposed limitation on what claims survive? Is whether the plaintiff can produce scientific studies suggesting that something is in fact unhealthy. It would be. But I think that we all know there are any number of studies out there that can show that particular ingredients, if, again, consumed in excess, could be unhealthy for one's diet. I think it would also really eviscerate the import of the Nutrition Facts Panel that Congress and the FDA have imposed and have been on every food product that we all have purchased for 30 years. But here we have complete balanced nutrition for heart and immune. Number one, DACA recommended, recommend two boxes per day as part of a healthy diet. Where the American Heart Association is recommending something quite different. But you're speaking to heart health here. And the FDA has this proposed rule on limiting sugar amounts. Why isn't that misleading to the reasonable consumer? Who, I think, if you stopped someone in the grocery store, they would not be able to tell you what the recommended consumption level as part of a 2,000-calorie diet is. I think as it relates to the proposed rule, as Judge Nardini pointed out, it is just a proposed rule. It would relate only to the use of the word healthy, which is not being made here as part of a nutrient content claim. It's only being made...  Healthy for heart. And the American Heart Association recommends against quantities of sugar in this magnitude. Again, I don't think the label itself just references heart. There's no reference to being healthy for heart on the label itself. And if the consumer believes that the sugar in the content does not make it healthy for heart, they have, again, all the information available to them to make that determination. And there are references in the bottle to being able to seek more information from Abbott or anything else that somebody may look to and say, how much sugar is too much sugar for me? So complete balanced nutrition for everyday health, complete balanced nutrition for heart, you think is an inadequate reference to heart health. I'm looking at the... I guess I... Let's see. Ensure and live advanced nutrition stake. All-in-one heart immune digestion. Recommended two bottles per day as part of a healthy diet. I think that is, if you... I don't know if you're reading from the complaint, but that's not how it appears on the label itself. And again, the label, as this Court has instructed, is the advertisement itself is what one needs to look at. And the front of the bottle there references heart in specific reference to plant-based omega-3 ALA. Yes, we will grant that the side of the package, in much smaller print, references that it is the most advanced nutritional product designed to help rebuild your strength and energy from the inside with an all-in-one blend to support your health. But that's not in specific reference to the heart. And there's no argument here that the plant-based omega-3 ALA does not support heart in the way that is represented on the front of the package. All right. Thank you. Thank you. Ms. Monroe, you have two minutes in a row. Thank you, Your Honors. I don't have anything additional to add, but I'm happy to answer any questions the Court may have. We're good. Thank you. Thank you, Your Honors. We'll reserve the decision and have a good day.